INGLIS, APPELLEE AND CROSS-APPELLANT, *v.* AMERICAN MOTORS CORP. ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Inglis v. American Motors Corp., 3 Ohio St. 2d 132.]

(No. 38916—Decided July 21, 1965.)

*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis* and *Mr. Marvin L. Karp,* for appellee and cross-appellant.

*Messrs. Jones, Day, Cockley & Reavis, Mr. Patrick F. McCartan* and *Mr. Robert K. Scott,* for appellants and cross-appellees.

HERBERT, J.  No less an authority than Dean Prosser, pre-eminent, especially, in the law of torts, has yielded to the temptation to tilt his lance of legal learning into the mass of difficult questions that have arisen during the last century in the field of products liability cases.

Over a hundred years ago, in 1842, The Court of the Exchequer, in the case of *Winterbottom* v. *Wright,* 10 M. & W. 109, 152 Eng. Rep. 402, 405, 11 L. J. Ex. 415, fashioned the rule that no manufacturer or seller of a product was ever liable to anyone with whom he had made no contract and Lord Abinger of the court had the following to say:

"Unless we confine the operation of such contracts as this

to the parties who entered into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue.''

Dean Prosser, writing in the May 1965 issue of the Cleveland Bar Association Journal speaks of the changes in the products liability law as follows:

''Since the year 1900 there has been no other set of cases which have so rapidly and violently overthrown the existing law as those which involve products liability.''

It would be of little benefit or aid in the solution of the questions here presented to review the history of the development of the law of products liability from *Winterbottom* to the present day. Hence we will consider the questions raised in the case at bar, with emphasis upon Ohio adjudications.

The question here may be stated in this language:

''Is privity of contract essential in an action based on breach of warranty where the purchaser of an automobile relies upon representations made in advertising of the manufacturer of the automobile in mass communications media to the effect that its automobiles are trouble-free, economical in operation and built and manufactured with a high quality of workmanship, and the purchaser suffers damage in the form of diminution of value of the automobile attributable to latent defects not readily ascertainable at the time of the purchase?''

The defendants' demurrer to the petition admits as true all facts properly pleaded. It follows, therefore, that the automobile manufactured and sold by the defendants to the plaintiff was defective as alleged in the petition to the extent that its value, instead of being $2,700—the price paid for it by the purchaser—was $1,200 thereby causing a pecuniary loss to the plaintiff in the sum of $1,500. There was no privity of contract between the defendant manufacturer and the plaintiff.

*Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244, is a landmark case in the development of the law of products liability. It is widely recognized and the reasoning therein is generally respected. The syllabus reads:

''1. Originally, an action grounded on breach of warranty sounded in tort rather than contract.

''2. An express warranty is an affirmation of fact by the seller as to a product or commodity to induce the purchase

thereof, on which affirmation the buyer relies in making the purchase.

"3. Under modern merchandising practices, where the manufacturer of a product in his advertising makes representations as to the quality and merit of his product aimed directly at the ultimate consumer and urges the latter to purchase the product from a retailer, and such ultimate consumer does so in reliance on and pursuant to the inducements of the manufacturer and suffers harm in the use of such product by reason of deleterious ingredients therein, such ultimate consumer may maintain an action for damages immediately against the manufacturer on the basis of express warranty, notwithstanding that there is no direct contractual relationship between them."

The distinguishing feature between *Toni, supra,* and the case at bar is that in *Toni* the purchaser of the "permanent" suffered some physical injuries to her hair and scalp by reason of using the product. In the case at bar there was not any personal injury or property damage—the loss being that of a pecuniary nature.

Judge Zimmerman in *Toni*, at page 248, said:

"Occasions may arise when it is fitting and wholesome to discard *legal concepts of the past to meet new conditions and practices of our changing and progressing civilization.* Today, many manufacturers of merchandise, including the defendant herein, make extensive use of newspapers, periodicals, signboards, radio and television to advertise their products. The worth, quality and benefits of these products are described in glowing terms and in considerable detail, and the appeal is almost universally directed to the ultimate consumer. Many of these manufactured articles are shipped out in sealed containers by the manufacturer, and the retailers who dispense them to the ultimate consumer are but conduits or outlets through which the manufacturer distributes his goods. *The consuming public ordinarily relies exclusively on the representations of the manufacturer in his advertisements. What sensible or sound reason then exists as to why, when the goods purchased by the ultimate consumer on the strength of the advertisements aimed squarely at him do not possess their described qualities and goodness and cause him harm, he should not be permitted*

*to move against the manufacturer to recoup his loss.* In our minds no good or valid reason exists for denying him that right. Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his advertisement and by the labels on his products are inducements to the ultimate consumers, and the manufacturer ought to be held to strict accountability *to any consumer who buys the product in reliance on such representations and later suffers injury because the product proves to be defective or deleterious.* See Prosser on Torts (2 Ed.) 506, Section 84; 1 Williston on Sales (Rev. Ed.) 648-650, Section 244 A." Judge Zimmerman concludes the foregoing observations in this language:

"We are fully aware that the position outlined is opposed to the present weight of authority and may conflict with previous decisions of this court. However, we consider it a reasonable and logical approach today in keeping with the modern methods of doing business."

The most recent case that we have been able to find that is squarely in point with the case at bar is *Santor v. A. & M. Karagheusian, Inc.* (1964), 82 N. J. Sup. 319, 197 A 2d 589, reversed by the Supreme Court (44 N. J. 52, 207 A 2d 305) on February 17, 1965.

Santor, the plaintiff, purchased approximately 100 square yards of what was claimed by the seller to be excellent carpeting. Within a few months the carpet showed streaks and the plaintiff was told that they would disappear. The streaks in the carpet became more marked and offensive and finally it was conceded that the carpet was practically worthless.

Action was brought against the manufacturer for the purchaser's financial loss by reason of the defective worthless carpet. This carpet was widely advertised. Plaintiff Santor was aware of this advertising. He brought an action for breach of warranty against the manufacturer. The plaintiff was awarded a judgment for pecuniary loss in the trial court. This judgment was reversed in the Appellate Division, but upon appeal to the Supreme Court of New Jersey the appellate judgment was likewise reversed and the judgment of the trial court reinstated.

The Appellate Division stated its conception of the law in this language:

"* * * It is clear to us that as of this writing, absent personal injury or damage to health consequent upon use of the product in question, there is no action in this state on the part of a purchaser of goods for breach of warranty in respect of their quality or fitness for use except as against the party from whom he has purchased them. * * *" 82 N. J. Super, at page 322. However the Supreme Court of New Jersey disagreed and stated the law as follows:

"There is no doubt that the great mass of warranty cases imposing liability on the manufacturer regardless of lack of privity were concerned with personal injuries to the ultimate consumer. * * * [Citation of authorities]. But we see no just cause for recognition of the existence of an implied warranty of merchantibility and a right to recovery for breach thereof regardless of the lack of privity of the claimant in the one case and the exclusion of recovery in the other simply because loss of value of the article sold is the only damage resulting from the breach.

"The manufacturer is the father of the transaction. He makes the article and puts it in the channels of trade for sale to the public. No one questions the justice of a rule which holds him liable for defects arising out of the design or manufacture, or other causes while the product is under his control. After completion the article may pass through a series of hands, such as a distributor and a wholesaler, before reaching the dealer at the point of ultimate intended sale. The dealer is simply a way station, a conduit on its trip from manufacturer to consumer. For these reasons in the recent past the courts of many jurisdictions, in an endeavor to achieve justice for the ultimate consumer, have imposed an implied warranty of reasonable fitness on the person responsible for the existence of the article and the origin of the marketing process. From the standpoint of principle we perceive no sound reason why the implication of reasonable fitness should be attached to the transaction and be actionable against the manufacturer where the defectively made product has caused personal injury and not actionable when inadequate manufacture has put a worthless article in the hands

of an innocent purchaser who has paid the required price for it. * * *''

We, therefore, affirm the judgment of the Court of Appeals as to the first cause of action.

Turning to the second cause of action, we note that the pleadings therein are directed towards an alleged lack of merchantability. However, the first cause of action is directed towards this identical subject matter and alleges that express warranties existed as to this subject matter. Where there are express warranties alleged as to a given subject matter, fact, or proposition there is no need for the law to imply a warranty. See Toni, supra, at page 249.

The judgment of the Court of Appeals is affirmed as to the second cause of action.

The third cause of action is founded in tort. Negligence by the defendants in inspecting the automobile prior to delivery is alleged. Plaintiff alleges that this negligence proximately caused him a loss of $1,500, the difference between the purchase price and the alleged market value of the automobile. Plaintiff does not allege that this negligence caused any damage to his person or to any property he owns other than that the auto is not worth what he paid for it.

Dean Prosser comments on whether this type of damage is recoverable in an action involving product liability based on negligence:

"The one kind of damage not included is pecuniary loss. In other words, loss of the benefit of the bargain. If somebody sells an automobile to a dealer and the dealer sells it to the plaintiff, and it turns out that it is just no good as an automobile, so that having paid let us say $3,000 for the car, the plaintiff has received $1,500 worth of car and is out of pocket on a $1,500 loss, that kind of pecuniary loss is still, so far as I can see, limited to contracts between the parties, and the usual rule that for negligence there is no liability for mere pecuniary loss of a bargain, that is apparently carried over into this new tort, if that's the name for it." Cleveland Bar Association Journal 174-175, May 1965.

We agree with the above comments. An appropriate discussion of negligence in an action where two of the causes of

action allege breach of warranty would tend to detract from the primary question before the court, *i. e.*, express and implied warranty. Confusion, rather than clarity, might well result. The pleader may well encounter difficulties in pleading tort liability and at the same time breach of warranty in the same petition. There would be presented further difficulties in the matter of proof and eventually during the trial an election would be in order.

Confining our holding strictly to the third cause of action the judgment of the Court of Appeals is affirmed.

The case at bar is one of first impression in Ohio. Ohio has already contributed one landmark case—*Rogers* v. *Toni Permanent Co., supra,* that is respected and followed widely in the field of products liability. It was an instance of Ohio leadership in a mass of difficult legal questions. The principle laid down in *Toni* has been a strong arm of the law in its development to keep pace with the remarkable economic growth of our country during the past one-half century.

We cannot overestimate the importance of a sound administration of justice in these days of ever growing, economic and social problems and challenges. The protection of the defenseless consumer has proven its value as a cornerstone in the structure of our national administration of justice. We believe that justice requires that the consumer who has been caused to suffer substantial pecuniary losses by national advertising of false claims should be protected regardless of the lack of privity.

Therefore, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL and SCHNEIDER, JJ., concur.