George **BAILEY**, Plaintiff,

v.

**ITT GRINNELL CORPORATION, et al., Defendants.**

Civ. A. No. C81–232.

United States District Court,
N. D. Ohio, E. D.

Feb. 5, 1982.

Edward M. Swartz, Swartz & Swartz, Boston, Mass., Alan I. Goodman, Goodman & King, Cleveland, Ohio, for plaintiff.

James F. Sweeney, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, for ITT Grinnell Corp.

George W. Lutjen, Davis & Young, Cleveland, Ohio, for V & O Press Co., Inc.

Jay A. Hollingsworth, Hollingsworth & Hollingsworth, Robert J. Gregor, Cleveland, Ohio, for Clifford Johnston and C. O. Johnston Co.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This is a products liability action in which the plaintiff, George Bailey (Bailey) seeks recompense for personal injuries suffered while operating a punch press in the course of his employment at Anchor Template Die, Incorporated (Anchor Template) in Cleveland, Ohio. Bailey asserts separate counts founded in negligence, breach of warranty and strict liability in tort against defendants, ITT Grinnell Corporation (ITT), and V & O Press Company Incorporated (V & O). ITT has filed a cross-claim against V & O and also filed a third party complaint against Clifford Johnston and the C. O. Johnston Company. The Court's diversity jurisdiction is properly invoked pursuant to 28 U.S.C. § 1332.

The matter is presently before the Court on ITT's motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. ITT seeks a judgment in its favor with respect to Count two (breach of warranty) and Count three (strict liability in tort) of plaintiff's complaint. Bailey has responded in opposition.

■ A review of the record in the within cause discloses the following pertinent chronology. In 1954, ITT purchased the punch press in issue for use in its own manufac-turing business. ITT sold the machine, through the use of a machine broker, Clifford Johnston (Johnston), to Anchor Template in 1973.[1] Bailey contends that on February 20, 1979, while operating the punch press as an employee of Anchor Template, he suffered severe injuries including the loss of four fingers from his left hand.

■ Resolution of the issues presented by the instant controversy requires review of the development of products liability law in Ohio. The modern body[2] of products liability doctrine in Ohio had its genesis in the Ohio Supreme Court decision in *Rogers v. Toni Home Permanent Co.*, 167 Ohio St. 244, 147 N.E.2d 612 (1958). The *Rogers'* Court rejected the "prevailing view" at the time and held that a consumer suffering personal injuries in reliance on representations contained in advertisements can maintain an action in tort for damages against the manufacturer notwithstanding the fact that no privity of contract between them exists. *Inglis v. American Motors Corp.*, 3 Ohio St.2d 132, 209 N.E.2d 583 (1965) extended the *Rogers* holding to encompass those cases wherein the plaintiff claims damages due to diminution in value of the product warranted.

While *Rogers* and *Inglis* are extremely important in the development of Ohio products liability law, the landmark decision in this field is *Lonzrick v. Republic Steel Corp.*, 6 Ohio St.2d 227, 218 N.E.2d 185 (1966). In *Lonzrick* the court established an action in tort for breach of an *implied* warranty without regard to contractual notions of privity. *Lonzrick* also found that it is unnecessary for the plaintiff to demonstrate reliance on any representations made by the defendant. *Id.* at 237, 218 N.E.2d at 192.

---

1. It should be noted that the parties disagree as to the appropriate status of Johnston. ITT appears to contend that Johnston was merely an intermediate owner of the machine while plaintiff asserts that Johnston acted as a broker for ITT. The Court, of course, must view the evidence in the light most favorable to the non-moving party. *New Jersey Life Ins. Co. v. Getz*, 622 F.2d 198 (6th Cir. 1980); *State Mutual Life Assurance Co. v. Deer Creek Park*, 612 F.2d 259 (6th Cir. 1979). In any event, the resolution of the matter reached by the Court within renders the dispute over Johnston's status moot.

2. *See generally Anton v. Ford Motor Co.*, 400 F.Supp. 1270 (S.D.Ohio 1975) (tracing the beginning of Ohio's products liability doctrine to 1938).

■ The next major development in this area occurred in 1977 with the Ohio Supreme Court's decision in *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977). In *Temple* the court adopted the doctrine of strict liability in tort by approving § 402A of the Restatement of Torts 2d. In approving § 402A, the Ohio Supreme Court noted "there are virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort". *Id.* at 322, 364 N.E.2d at 271 (footnote omitted). Recent Ohio Supreme Court cases have focused on strict liability in tort rather than the warranty in tort theory. *Leichtamer v. American Motors Corp.*, 67 Ohio St.2d 456, 424 N.E.2d 568 (1981); *Seley v. G.D. Searle & Co.*, 67 Ohio St.2d 192, 423 N.E.2d 831 (1981). Nevertheless, in *Leichtamer, supra* the court recognized that the warranty in tort theory still exists, at least in name, in Ohio products liability law. *Leichtamer, supra* at 463, 424 N.E.2d at 575.

While the Ohio courts were fashioning a tort remedy for product defectiveness, the Ohio General Assembly provided consumers, in certain instances, with a contractual remedy by adopting, in 1962, Article 2 of the Uniform Commercial Code (UCC) § 1302.01 et seq., O.R.C. Not only do the provisions of the UCC establish standards for the application and exclusion of express and implied warranties in contracts for sale, *see* §§ 1302.26–1302.29, O.R.C., the UCC extends the benefit of a seller's warranty to certain persons who are not parties to the contract. Specifically § 1302.31, O.R.C. provides:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

In essence § 1302.31 horizontally extends privity of contract beyond the buyer. *See* J. White and R. Summers, Uniform Commercial Code 399–411 (2d ed. 1980); Squillante, *Warranty Sales Law in Ohio* 31 Case. W.Res.L.Rev. 211, 279–87 (1981). *See also* Annot. 100 A.L.R.3d 743 (1980).[3] Thus, by statute the Ohio General Assembly provided a remedy in *contract* to those persons within the purview of § 1302.31 in addition to the judicially created tort remedies.[4] It should be recognized, however, as the Sixth Circuit Court of Appeals noted, that Ohio decisions succeeding the adoption of the UCC, "have continued to rely upon the pre-existing Ohio law of products liability largely ignoring the Uniform Commercial Code." *Drayton v. Jiffee Chemical Corp.*, 591 F.2d 352, 359 (6th Cir. 1978).

The foregoing illustrates that, although the field of products liability law in Ohio was once described as the distillation of a "slow, orderly and evolutionary development" *Lonzrick supra* at 239, 218 N.E.2d at 194, the field is presently lacking clarity and precision. Nevertheless, the Court has assiduously applied the principles of Ohio law to the issues at bar and, for the reasons set forth more fully below, finds that ITT's

---

**3.** The vertical and horizontal privity distinction is aptly and succinctly explicated in White and Summers *supra* at 399:

There are two basic kinds of "non-privity" plaintiffs. The "vertical" non-privity plaintiff is a buyer within the distributive chain who did not buy directly from the defendant. For example, a man who buys a lathe from a local hardware store and then later sues the manufacturer is a "vertical" non-privity plaintiff. The "horizontal" non-privity plaintiff is not a buyer within the distributive chain but one who consumes or uses or is affected by the goods. For example, a woman poisoned by a bottle of beer that her

husband purchased from a local grocer is a horizontal non-privity plaintiff. So, too, is a son who is injured by the new lawnmower his father bought, and the employee hurt by equipment purchased by her employer, and so on.

**4.** For an exploration of the position that the UCC can accomplish everything strict tort liability accomplishes, *see* Shanker, *A Reexamination of Prosser's Products Liability Crossword Game: The Strict or Stricter Liability of Code Sales Warranty*, 29 Case W.Res.L.Rev. 550 (1979).

motion for partial summary judgment has merit.

■ Count three of plaintiff's complaint is predicated on strict tort liability and therefore, as previously resolved, is governed by § 402A of the Restatement of Torts 2d. That section provides in its entirety:

Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

ITT contends that its transfer of the punch press in issue to Anchor Template was an isolated sale of used equipment and therefore ITT is not a "seller engaged in the business of selling" punch presses. Accordingly, ITT asserts that it is not subject to strict liability in this instance.

In assessing ITT's contentions, the Court would note initially that, in approving § 402A the Ohio Supreme Court specifically recognized the utility of the Restatement's illustrative comments. *Temple v. Wean United, Inc., supra* at 322, 365 N.E.2d at 271. Accordingly, the appropriate starting point in analyzing ITT's status is § 402A Comment f, which provides:

f. Business of selling. The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. Thus the rule applies to the owner of a motion picture theatre who sells popcorn or ice cream, either for consumption on the premises or in packages to be taken home.

The rule does not, however, apply to the occasional seller of food or other such products who is not engaged in the activity as a part of his business. Thus it does not apply to the housewife who, on one occasion, sells to her neighbor a jar of jam or a pound of sugar. Nor does it apply to the owner of an automobile who, on one occasion, sells it to his neighbor, or even sells it to a dealer in used cars, and this even though he is fully aware that the dealer plans to resell it. The basis for the rule is the ancient one of the special responsibility for the safety of the public undertaken by one who enters into the business of supplying human beings with products which may endanger the safety of their persons and property, and the forced reliance upon that undertaking on the part of those who purchase such goods. This basis is lacking in the case of the ordinary individual who makes the isolated sale, and he is not liable to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, § 15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, § 2–314, to a seller who is a merchant. This Section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like.

The plain import of Comment f is that strict tort liability is not an appropriate theory of liability for application to the occasional seller.

The Court has not found, nor have the parties cited, an Ohio case directly addressing the issue of a defendant's capacity as a

"seller" within the context of § 402A and Comment f. *See generally Knous v. Ridge Mach. Co.*, 64 Ohio App.2d, 251, 413 N.E.2d 1218 (Lucas County 1979) (holding that the sale of a limited number of die casting machines by a manufacturer, whose principal business was the manufacture of die castings, did not render the manufacturer a seller of die casting machines to the general public for purposes of applying Ohio's dual capacity doctrine).

However, a limited number of cases from other jurisdictions have addressed the issue and those cases are instructive. For example, in *Balido v. Improved Machinery, Inc.*, 29 Cal.App.3d 633, 639, 105 Cal.Rptr. 890 (1972), a case on all fours with the case at bar, the Papermate Manufacturing Company purchased a molding press from the manufacturer, Improved Machinery, Incorporated. After five years Papermate sold the machine to the plaintiff's employer and plaintiff was injured while operating the press in the course of her employment. In rejecting the plaintiff's contention that Papermate was strictly liable for her injuries, the court stated:

> [T]here was nothing to suggest that Papermate was a conduit for the production or distribution of Improved's presses. *Papermate was no more than a one-time "occasional seller" who does not become subject to strict liability for manufacturing or design defects.*

*Id.* at 639–40, 105 Cal.Rptr. at 895. (emphasis added).

Similarly, in *McKenna v. Art Pearl Works, Inc.*, 225 Pa.Super.Ct. 362, 310 A.2d 677 (1973), the Court held that a button manufacturer who made a single sale of a punch press to another button manufacturer was not in the business of selling punch presses and therefore was not strictly liable under § 402A to an employee of the purchaser of the press. Accordingly, the court affirmed summary judgment in favor of the defendant on a cause of action founded in strict liability in tort. *See also Bruce v. Martin-Marietta Corp.*, 544 F.2d 442 (10th Cir. 1979); *Siemen v. Alden*, 34 Ill.App.3d 961, 341 N.E.2d 713 (1975). *Cf. Bevard v.*

*Ajax Mfg. Co.*, 473 F.Supp. 35 (E.D.Mich. 1979) (holding that an intermediate owner/seller of a press was not liable under Michigan's "common law warranty theory."). *See generally*, Annot. 99 A.L.R.3d 651 (1980).

In the within case ITT has submitted an affidavit from its assistant general counsel wherein he unequivocally asserts that, while ITT did sell the press in question to Anchor Template, it "is not and has never been, a designer, manufacturer, assembler, marketer, rebuilder, distributor, retailer or seller of punch presses." Motion of ITT at Exhibit A. ITT's answers to plaintiff's interrogatories are consistent with this affidavit. In response to ITT's assertion, plaintiff merely contends that the sheer size of ITT entitles plaintiff to an "inference" that ITT is more than an occasional seller of punch presses.

 In ruling on the instant motion, the Court must construe the evidence in the light most favorable to the plaintiff. *See* n.1 *supra.* Furthermore, the moving party has the burden of demonstrating that there exists no material issue of fact and that it is entitled to judgment as a matter of law. *See e.g. Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert. dism.* 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Felix v. Young*, 536 F.2d 1126 (6th Cir. 1976). However, where a party has supported his motion with affidavits or other material, the non-moving party may not simply rely on his complaint to create an issue of fact. As provided in Rule 56(e), Fed.R.Civ.P.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*See also, State Mutual Life Assurance Co., supra; Felix v. Young, supra.* Stated more succinctly, "plaintiffs are not entitled 'to get to the jury on the basis of the allega-

tions in their complaints, coupled with the hope that something can be developed at trial.'" *Smith v. Hudson, supra* at 65, quoting *First National Bank v. Cities Service,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

█ Applying the foregoing principles to the case *sub judice,* the Court is constrained to conclude that ITT is not a seller engaged in the business of selling punch presses as that status is construed under § 402A. ITT's uncontroverted affidavit and answers to interrogatories clearly establish that, at most, ITT is an "occasional seller" of its used machines. Plaintiff's contention that ITT's corporate size creates an inference that ITT transfers numerous presses is simply untenable and falls far short of setting forth "specific facts showing that there is a genuine issue for trial."

Because ITT is not a seller engaged in the business of selling punch presses, it is, of course, not subject to strict liability in tort under the instant circumstances. Accordingly, summary judgment is appropriate in ITT's favor with respect to Count three of plaintiff's complaint.

With respect to plaintiff's breach of warranty Count, it would appear that both parties have predicated their arguments on varying interpretations of the UCC. However, a review of the distribution chain of the punch press discloses that the provisions of the UCC are inapplicable to this case.

█ Insofar as pertinent to the matters herein, the distribution chain reveals that ITT sold the press to plaintiff's employer, Anchor Template,[5] and that plaintiff was injured while operating the machine in the course of his employment. Obviously then, plaintiff is not one "who is in the family or household of [the] buyer or who is a guest in [the buyer's] home" § 1302.31, O.R.C. Accordingly, plaintiff has no contractual relationship with ITT and the provisions of the UCC do not apply to plaintiff's warranty action. *Lee v. Wright Tool & Forge Co.,* 48 Ohio App.2d 148, 356 N.E.2d 303 (Summit County Ct.App.1975). *See Mahalsky v. Salem Tool Co.,* 461 F.2d 581 (6th Cir. 1972); *United States Fidelity & Guarantee Co. v. Truck & Concrete Equipment Co.,* 21 Ohio St.2d 244, 257 N.E.2d 380 (1970).[6]

█ The fact that Count two of plaintiff's complaint fails to state a claim under the UCC does not, however, dispense with it. As previously indicated, Ohio law continues to recognize an action in tort for breach of warranty. Accordingly, plaintiff's complaint must be viewed as an attempt to utilize Ohio's warranty in tort theory.

Perceived in this light, the issue facing the Court is whether a defendant who is not "a seller engaged in the business of selling" for purposes of strict tort liability pursuant to § 402A, can nevertheless be held liable under an implied warranty in tort theory.

In resolving this issue, the Court finds most instructive the fact that, in adopting § 402A, the Supreme Court noted that strict tort liability and Ohio's warranty in tort theory are virtually indistinguishable.

---

**5.** *See* n.1 *supra* and accompanying text.

**6.** Plaintiff's reliance on Comment 3 to § 1302.-31 is misplaced. Comment 3 provides, in pertinent part:

[T]he section is neutral and is not intended to enlarge or restrict the developing case law on whether the seller's warranties, given to his buyer who resells, extend to the other persons in the distributive chain.

This Comment refers to vertical privity and not horizontal privity. *See* White & Summers *supra* at 399–411. The plaintiff's downfall in the instant matter is his lack of horizontal privity. In this regard the Court would note that Ohio House Bill 779, 114th General Assembly, 1981–82 Sess. would extend a seller's warranty to the buyer's employee by amending § 1302.31 to read as follows:

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods, AND TO ANY NATURAL PERSON WHO IS AN EMPLOYEE OF THE BUYER, WHETHER OR NOT IN THE BUYER'S HOME, IF IT IS REASONABLE TO EXPECT THAT SUCH PERSON MAY USE, WORK WITH, OR BE AFFECTED BY THE GOODS, and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

90

*Temple v. Wean United Inc., supra* at 322, 364 N.E.2d at 271. *See Leichtamer v. American Motors Corp., supra* at 463, 424 N.E.2d at 575. ("A product which is unfit and unsafe for its intended use under an 'implied warranty in tort theory' would also be unreasonably dangerous under Section 402A theory.")

Considering the near identical nature of the two theories, it would be extremely anomalous if a plaintiff was permitted to subject the same defendant to liability under a warranty in tort theory that he was precluded from reaching under § 402A. The Court cannot countenance, nor would the Ohio courts foster, such an anomaly. Accordingly, the Court is compelled to conclude that, in order to hold a defendant liable under Ohio's warranty in tort theory, the defendant must be a "seller engaged in the business of selling the product" as that status is defined and interpreted under § 402A. Therefore, because the Court has found that ITT does not possess this status on the facts of the case at bar, ITT is entitled to judgment as a matter of law on Count two of plaintiff's complaint.

In accordance with the foregoing, summary judgment is hereby entered in defendant ITT's favor on Counts two and three of the plaintiff's complaint.

IT IS SO ORDERED.