ORLEY, Appellee,

v.

**ED PIKE LINCOLN–MERCURY, INC.; Ford Motor Company, Appellant.**

[Cite as *Orley v. Ed Pike Lincoln–Mercury, Inc.* (1989), 61 Ohio App.3d 629.]

Court of Appeals of Ohio,
Lake County.

No. 13–053.

Decided April 10, 1989.

*Jerome S. Berkeley,* for appellee.

*Aubrey B. Willacy* and *William Mikesell,* for appellant.

EDWIN T. HOFSTETTER, Presiding Judge.

On May 13, 1983 appellee, Philip Orley, purchased a new 1983 Mark IV Lincoln automobile from Ed Pike Lincoln–Mercury, Inc. ("Ed Pike"). Attendant to this sale, appellee also received from appellant, Ford Motor Company

("Ford"), an express limited warranty upon the vehicle, which warranty, in pertinent part, provided two tiers of coverage, as follows:

"*12 MONTHS—12,000 MILES*

"FORD NEW VEHICLE WARRANTY

"Ford Motor Company warrants that the Selling Dealer will repair, replace or adjust any parts, except tires, on 1983 Ford Motor Company cars, found to be defective in factory materials or workmanship made or supplied by Ford.

"REPAIRS AND ADJUSTMENTS

"The warranty covers any repairs and adjustments to correct defects in factory material or workmanship made or supplied by Ford. The term 'adjustments' refers to minor repairs not usually associated with replacement of parts.

"NO CHARGE REPAIRS

"Your Lincoln dealer will perform warranty repairs (parts and labor) at no charge, using Ford or Motorcraft Service parts or Ford Authorized Remanufactured parts. A reasonable time must be allowed to perform a repair. All we require is that you properly operate, maintain and care for your vehicle, and that you return the vehicle for warranty service to your Selling Dealer's place of business.

"WARRANTY DURATION

"The warranty begins on the original retail delivery date, or on the date of first use, whichever occurs earlier. The warranty ends at 12 months or 12,000 miles, whichever occurs first.

" * * *

"*36 MONTHS—36,000 MILES*

"MAJOR COMPONENTS COVERAGE

"The coverage of the major components listed below begins at 12 months or 12,000 miles, whichever occurs earlier, from the vehicle original retail delivery date or the date of first use and ends at 36 months or 36,000 miles, whichever occurs first. You will be required to pay the first $50 of the warranty repair charges for each covered repair visit.

" * * *

"*MAJOR COMPONENTS COVERED*

"*Engine*—Cylinder block, heads, all internal parts, manifolds, timing gears and chain, flywheel, valve covers, oil pan, timing chain cover, oil pump, seals and gaskets, water pump, and fuel pump.

" * * *

"*ITEMS NOT COVERED BY WARRANTY*

"MAINTENANCE

"Cleaning and polishing, *lubrication,* engine tune-up, replacement of filters, worn windshield wiper blades and brake linings/pads are some of the normal maintenance services all vehicles require. See Owner's Guide for full details. * * * [Emphasis added.]

"DAMAGE

"The owner is responsible for repairs due to FIRE, ACCIDENTS, or DAMAGE from objects striking the vehicle; MISUSE of the vehicle such as driving over curbs, overloading, racing, etc. (proper use is described in the Owner's Guide); ALTERATIONS by changing or adding to the vehicle; DAMAGE (including surface corrosion) FROM ENVIRONMENT such as airborne fallout (chemicals, tree sap, etc.), salt, sand, hail, windstorm, lightning, road hazards, etc.; *LACK OF PROPER MAINTENANCE* (proper maintenance is described in the Owner's Guide). [Emphasis added.]

" * * *

"This warranty gives you specific legal rights and you may also have other rights which may vary from state to state. Ford Motor Company does not authorize any person to create for it any other obligation or liability in connection with these vehicles. TO THE EXTENT ALLOWED BY LAW, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE APPLICABLE TO THESE VEHICLES IS LIMITED IN DURATION TO THE DURATION OF THIS WRITTEN WARRANTY. NEITHER FORD MOTOR COMPANY NOR THE SELLING DEALER SHALL BE LIABLE FOR LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, OR CONSEQUENTIAL DAMAGES. Some states do not allow limitations on how long an implied warranty will last or the exclusion or limitation of incidental or consequential damages, so the above limitations or exclusions may not apply to you."

The "Owner's Guide" provides in relevant parts:

"If the (Oil Pressure Warning) light glows steadily above idle speed, it indicates a loss of pressure in the engine's oil system. Safely pull off the road and stop the engine immediately to determine the cause.

"*CAUTION—If the engine is not stopped immediately severe engine damage could result.*" (Emphasis *sic.*)

In addition, the guide recommends checking the oil level every five hundred miles and changing it every seven thousand five hundred miles.

On August 21, 1984 at 22,275 miles, the vehicle was towed to Ed Pike's from Kelly's Towing Company's lot, where it had been taken the night before.

Appellee's mother was driving the vehicle on August 20, 1984 when the engine stopped running. She testified that she was not aware if the oil light had come on, but noted that prior to the engine failure, the car "had just felt different."

Upon investigation by Ed Pike, simple battery failure was first suspected. However, upon further investigation, after the engine was torn apart, the engine was found to be "sludged up." The crank case oil reserve contained only one quart of engine oil; internally, the engine showed a heavy accumulation of dirt, and the oil was worn out and had congealed. Further inspection by Ed Pike indicated that major damage to the engine had occurred, necessitating its replacement. Because no manufacturing defect was found, appellee was denied warranty coverage and therefore paid approximately $3,800 to replace the engine. Thereafter, appellee filed a complaint against Ed Pike and Ford.

At trial, William Moody, a mechanic, testified that he twice had changed the vehicle's oil. The first oil change occurred on August 6, 1983 with the odometer reading 6,598 miles, and the second on May 3, 1984 with the odometer reading 14,770 miles.

During the course of the trial, appellee did not offer any testimony identifying the cause of the engine failure. His case consisted of showing that he complied with proper maintenance requirements and that the engine "seized up."

At the close of appellee's case in chief, counsel for the defendants moved for a directed verdict. The motion was granted as to Ed Pike, but it was denied as to appellant.

At the close of all the evidence, the jury returned a verdict for appellee awarding judgment in the sum of $4,796.89 against appellant. Appellant timely appealed that decision based upon the following two assignments of error:

"1. The trial court committed error prejudicial to defendant Ford Motor Company by overruling said defendant's motion for a directed verdict upon the conclusion of plaintiff's case in chief because plaintiff wholly failed to adduce any evidence whatsoever that his subject loss was due to a defect in materials or workmanship existing in the subject vehicle when it left Ford's hands.

"2. The trial court committed error prejudicial to defendant Ford Motor Company when, in ruling upon defendant's motion for a directed verdict at the conclusion of plaintiff's case, he refused to apply the clear law of Ohio, as

established by the General Assembly and the Supreme Court of this state, regarding the burden of proof which plaintiff was required to meet."

Both assignments question the basis for denying the directed verdict motion. Both assert that appellee had not sufficiently proved his case. More specifically, both suggest that appellee has not met his burden of proof in order to establish a manufacturing defect. To the extent that the underlying analysis is similar, the two assignments shall be treated as one.

As previously noted, appellee failed to produce any evidence which indicated any specific defect in the vehicle. Appellee presented evidence that he complied with the oil change schedule and proper maintenance and that the engine seized up. He suggests that such proof is enough to submit the case to the jury and allow them to conclude that the engine was defective.

To support their respective positions, both parties rely upon *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227, 35 O.O.2d 404, 218 N.E.2d 185, and *Inglis v. American Motors Corp.* (1965), 3 Ohio St.2d 132, 32 O.O.2d 136, 209 N.E.2d 583. Neither is directly on point when applied to the facts of the case *sub judice.*

It should be noted that the court in *Lonzrick* was establishing the criteria in which a complaint has sufficiently alleged a cause of action, not the level of proof necessary to show that same cause at trial.

*Inglis, supra,* is also inappropriate. The facts in *Inglis* are substantially different from these in the case *sub judice.*

Appellant relies heavily on its interpretation of the meaning of R.C. 1302.-65(D), which says, "The burden is on the buyer to establish any breach with respect to the goods accepted."

The appellant, in our opinion, is urging more specific proof of physical defects in the manufacture of the product than is required by statute. Admittedly, in accident cases, where parts of the vehicle may be examined by the experts of both parties for faults or lack thereof in their manufacture, that reasoning may apply.

When, however, there is evidence, as here, that the appellee did everything required of him in the maintenance of the vehicle, and the tear down and inspection of the vehicle was performed by the appellant to ascertain the problem, the opportunity for the establishment of the facts to determine the cause of and liability for the defects was wrested away from the appellee. Under the circumstances, has not the appellee complied with the requirements of R.C. 1302.65(D)?

In the instant case, at least for purposes of a motion for directed verdict, we may ascertain from the evidence that (1) warranties exist, (2) the vehicle was

within the warranty period, (3) appellee performed all necessary requirements of him under the terms of the warranties, (4) the engine, within the warranty period, "seized up," and (5) the appellant, after dismantling and examining the vehicle in its possession and control, determined the warranty did not apply.

At this stage, in our opinion, a motion for directed verdict is premature, or at least, is properly overruled by the trial court. The requirements of *Lonzrick, supra,* if applicable at this stage of the proceedings, *in the absence of appellee's negligence or violation on his part of his duties under the warranties,* must permit the existence of presumptions that (1) there was a defect unascertainable by him in the product manufactured and sold by the appellant, (2) such unascertainable defect existed at the time the product left the hands of the appellant, and (3) the defect was the direct and proximate cause of the plaintiff's loss.

Construing the appellant's motion most strongly in favor of the appellee, it would have been premature and unconscionable for the trial court to have directed a verdict at the end of appellee's case. The trial court's language, at the time of overruling the motion, clearly is bottomed on the unconscionable results that may be obtained by so doing. (See R.C. 1302.15.)

The above presumptions, although perhaps not provable in specifics by the appellee due to limitations imposed on him under the circumstances, could provide the jury a basis for a verdict in his favor, if only on the basis of *res ipsa loquitur,* if the appellant, in its evidence, fails to establish that the defects or problems were caused by the appellee. This reasoning is not without precedence. In *Eckstein v. Cummins* (1974), 41 Ohio App.2d 1, at 10–11, 70 O.O.2d 10, at 15, 321 N.E.2d 897, at 904, the court said:

"To place the purchaser of a defective vehicle incapable of repair in the anomalous position of having no actionable claim for relief pursuant to the strict language of the express warranty and disclaimer therein, because the precise nature of the defect cannot be determined and the plaintiff cannot identify any defective part, the replacement of which could remedy the defect, would be to defeat the very purpose of the warranty which had been given to the purchaser. Such a result would substantially deprive the buyer of the benefit of his bargain and is unconscionable. Although the warranty and disclaimer, which is strictly limited to parts, is not unconscionable on its face, it cannot be applied to the facts of this unique case in a conscionable manner. Otherwise, there would be noncompliance with R.C. 1302.15 and 1302.93(B). *Meyer v. Packer [sic] Cleveland Motor Co.* (1922), 106 Ohio St. 328 [140 N.E. 118]; *Henningsen v. Bloomfield Motors* (1960), 32 N.J. 358, 161 A.2d 69; *Hardy v. General Motors Acceptance Corp.* (1928), 38 Ga.App. 463, 144 S.E. 327; cf. *Manheim v. Ford Motor Co.* (Fla.1967), 201 So.2d 440; *Walsh v. Ford*

*Motor Co.* (1969), 59 Misc.2d 241, 298 N.Y.S.2d 538; *Jacobs v. Metro Chrysler–Plymouth, Inc.* (1972), 125 Ga.App. 462, 188 S.E.2d 250; *Greeno v. Clark Equipment Co.* (N.D.Ind.1965), 237 F.Supp. 427."

Likewise, one of appellant's own citations, *State Auto Mutual Ins. Co. v. Chrysler Corp.* (1973), 36 Ohio St.2d 151, 65 O.O.2d 374, 304 N.E.2d 891, cites Prosser, Law of Torts (4 Ed.1971) 672, Section 103, saying at 156, 65 O.O.2d at 377, 304 N.E.2d at 895, " * * * a defective condition may be proved by circumstantial evidence, when such evidence makes out a preponderance of probability that the accident was caused by a defect and not other possibilities, although it is not necessary in a civil action to eliminate all other possibilities." (Citations omitted.)

The court in *State Auto Mutual, supra,* at 157, 65 O.O.2d at 377, 304 N.E.2d at 895, went on to say, "We conclude, therefore, that, even absent the testimony of the automobile mechanic, appellant introduced sufficient circumstantial evidence to avoid a directed verdict on the issue of the existence of a defect in the right-front brake hose at the time it passed out of the control of appellees."

When the evidence by the appellee is such that it is a jury question whether any failures on his part contributed to or caused the loss he suffered, bearing in mind the limitations imposed on him in proving the specific defects of the engine no longer under his control but in the hands of the appellant, he has for purposes of a directed verdict against him, produced evidence which furnished a reasonable basis for sustaining his claim. The trial court did not err in overruling appellant's motion for a directed verdict. Assignments of error one and two are without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

STILLMAN and PARRINO, JJ., concur.

EDWIN T. HOFSTETTER, P.J., retired, of the Eleventh Appellate District; SAUL G. STILLMAN, J., retired, of the Eighth Appellate District, and THOMAS J. PARRINO, J., retired, of the Eighth Appellate District, sitting by assignment.