ABBOTT ET AL., APPELLANTS, *v.* U.S.I. CLEARING CORPORATION ET AL., APPELLEES.

(No. F-83-11—Decided April 20, 1984.)

*Harold M. Steinberg, Charles V. Contrada* and *Joan H. Rife,* for appellants.

*M. Donald Carmin, Glenn E. Wasielewski* and *John A. Pietrykowski,* for appellees.

HANDWORK, J. This case is before the court on appeal from a judgment of the Fulton County Court of Common Pleas, which granted summary judgment in favor of co-defendants-appellees, U.S.I. Clearing Corporation and Chrysler Corporation (hereinafter U.S.I. and Chrysler).

In 1952, the corporate predecessor of U.S.I. manufactured a seventy-five-ton OBI, single gear press (serial number 52-197168). This press was built, tested and then sold to Chrysler in 1953, along with three similar presses. After its sale to Chrysler, and while in Chrysler's possession, the component parts of the press were extensively altered.

In 1980, Chrysler closed the plant where the particular press in question was being used. It thereafter held a public auction at which all the plant's equipment, including this press, was offered for sale. At the auction, the G.B. Manufacturing Co. (appellant's employer) purchased the press and other plant equipment. By the terms under which the auction was conducted, the press was sold "as is" and "where is." The contract of sale for this particular press contained the following clause:

"This press, or other item, is sold 'as is', 'where is' and the last owner makes no warranties, expressed or implied, common law or contractual, in connection with this sale."

The record indicates that, in acquiring the press, appellant's employer knew and fully understood the stated terms of the sale. The press itself bore

no standard warning labels regarding latent defects. Once purchased, the press was disassembled at the Chrysler plant by someone appellant's employer had hired. This party then transported the press to the G.B. Manufacturing plant, and there reassembled it. G.B. Manufacturing also hired an electrician to "wire" the machine and "get it running," according to the depositions. Once the press had been reassembled and installed at the plant, its activation mechanism was altered. The press' activation mechanism consisted of two "palm buttons," which were made adjustable to move from eye-level to waist-level position, depending on how the press was being used. G.B. Manufacturing also installed a "point-of-operation" guard, which acted as a barrier for the user, completely encasing the working area around the press.

During the initial period of use following its purchase, the press appeared to operate properly. Appellant, Brian E. Abbott, had been working at the G.B. plant for approximately six months before he was injured. He was apparently there when the press was first delivered. Appellant had operated the press approximately one hundred times before being injured, and his deposition indicates that he was satisfied that the machine worked properly. However, the record also reveals that appellant knew the press had a tendency to "repeat," that is, to continue rotating its stamper through another cycle without being activated by pressure on the "palm buttons."

On November 24, 1981, appellant was using the press. He had been stamping washers on the machine and, to facilitate his work, he placed a board across the two palm buttons, thereby needing only one hand to trigger a rotation of the stamper. While working, scrap metal became jammed in the press, and appellant attempted to remove it. At this point, in order to extract the jammed metal, appellant removed the "point-of-operation" barrier to get at the "die-area" of the press. As his arm reached into this area, the press spontaneously cycled (or "repeated"). Appellant's arm was severed below the elbow, the injury for which he now sues. It should be noted that the evidence also indicates that appellant knew he should have used an elongated device other than his arm to clear scrap metal from the press, having read similar warnings to this effect on other industrial machines he had worked with.

Appellant filed his complaint against Chrysler and U.S.I. on January 3, 1983. Chrysler thereafter filed a third-party complaint against G.B. Manufacturing. Eventually, in October 1983, Chrysler and U.S.I. filed motions for summary judgment. On December 14, 1983, the trial court granted both motions, and dismissed Chrysler's third-party complaint. This appeal followed.

In bringing this appeal, appellant presents three assignments of error for review, the first and second of which are:

"1. The trial court erred in failing to find that the issue of Chrysler's negligence in failing to warn constituted a material issue of fact.

"2. The trial court erred in failing to find that the issue of whether Chrysler's massive sale of machines removed it from the category of 'an occasional seller' constituted a material issue of fact."

In support of his first assignment of error, appellant argues that the trial court incorrectly relied upon the Ohio Supreme Court's recent decision in *King v. K.R. Wilson Co.* (1983), 8 Ohio St. 3d 9, in finding that Chrysler was absolved of liability on a negligence theory because the press' activation mechanism had been substantially altered. Appellant attempts to distinguish the *King* case, contending that it dealt only with

the liability of a defendant-*manufacturer* who had been sued on a theory of *strict liability* in tort. However, a careful reading of the *King* opinion indicates that the Supreme Court focused on the manufacturer's liability under a *negligence* theory for injuries caused by a die-cast trim press, the activation mechanism of which had undergone substantial modifications. The manufacturer's negligence was predicated on its "failure to warn" users of the potential dangers of the trim press. The Supreme Court stated:

"'* * * [A]s to the manufacturer's averred negligence in failing to warn of the dangers of the trim press, we are compelled to follow paragraph four of the syllabus in *Temple* v. *Wean United, Inc.* [(1977), 50 Ohio St. 2d 317], *supra:*

"'There is no duty to warn extending to the speculative anticipation of how manufactured components, not in and of themselves dangerous or defective, can become potentially dangerous dependent upon their integration into a unit designed and assembled by another.'" *King* v. *K.R. Wilson Co., supra,* at 11.

Given the numerous, substantial alterations and modifications that the press here underwent, including those made by appellant and his employer, we conclude that these facts place this case within the rule announced in *Temple* v. *Wean United, Inc.* (1977), 50 Ohio St. 2d 317, and applied, on similar facts, in *King* v. *K. R. Wilson, supra,* at least as to the negligence issue regarding Chrysler (including an asserted "duty to warn"). Accordingly, the first assignment of error is not well-taken.

In support of the second assignment of error, appellant argues that Chrysler's one-time "massive sale" of plant machinery at the auction gave rise to a disputed issue of material fact as to whether Chrysler was "an occasional seller" or "a seller engaged in the business of selling such a product [the press]" under 2 Restatement of the Law 2d (1965) 347-348, Torts, Section 402A. Section 402A has been adopted in Ohio in *Temple* v. *Wean United, supra.* See *id.* at 321-322. As stated in the first paragraph of the syllabus in the *Temple* case:

"1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, *if*

"(a) *the seller is engaged in the business of selling such a product, and*

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Emphasis added.)

Notwithstanding the issue of whether G.B. Manufacturing (and then, later, appellant himself) modified the press' activation mechanism to the extent that this alteration constituted an intervening, superseding cause of appellant's injuries, we conclude that Chrysler, on these facts, was not a "seller * * * engaged in the business of selling" presses. We agree with the observation in *Bailey* v. *ITT Grinnell Corp.* (N.D. Ohio 1982), 536 F. Supp. 84, 87:

"'* * * [S]trict tort liability is not an appropriate theory of liability for application to the occasional seller."

The *Bailey* court cited Comment *f* to Section 402A, which states, in part:

"*Business of selling.* The rule stated in this Section applies to any person engaged in the business of selling products for use or consumption. It therefore applies to any manufacturer of such a product, to any wholesale or retail dealer or distributor, and to the operator of a restaurant. It is not necessary that the seller be engaged solely in the business of selling such products. * * *

"The rule does not, however, apply

to the occasional seller of food or other such products who is not engaged in that activity as a part of his business. * * *

"* * * [I]n the case of the ordinary individual who makes the isolated sale, * * * [the historical reasons for the theory of strict liability are lacking] and he is not liable to a third person, or even to his buyer, in the absence of his negligence. An analogy may be found in the provision of the Uniform Sales Act, § 15, which limits the implied warranty of merchantable quality to sellers who deal in such goods; and in the similar limitation of the Uniform Commercial Code, § 2-314, to a seller who is a merchant. This Section is also not intended to apply to sales of the stock of merchants out of the usual course of business, such as execution sales, bankruptcy sales, bulk sales, and the like." 2 Restatement of the Law 2d, Torts, at 350-351.

As is obvious to everyone, Chrysler is engaged in the business of selling automobiles and automotive parts, not presses or similar machines. The infrequent sale of plant machinery at an auction after one of its plants has closed should not magically transform Chrysler into a seller of presses or similar equipment or elevate it to the status of a corporate merchant doing business in that kind of product for purposes of strict liability under Section 402A(1)(a). Standing alone, neither its corporate size nor the fact that Chrysler auctioned-off a large number of these presses (a "massive sale," as appellant describes it) suffices to establish that Chrysler was other than an "occasional seller."

Moreover, since Chrysler sold the press here "as is" and "where is," with no attendant warranties, and since appellant's employer clearly knew about the terms and conditions of the sale, including the fact that the press might contain defects, we also conclude that the holding in *Thrash* v. *U-Drive-It Co.* (1953), 158 Ohio St. 465, is, by analogy, applicable to the facts *sub judice*.[1]

Accordingly, appellant's second assignment of error is not well-taken.

Appellant's third assignment of error is:

"3. The trial court erred in failing to find that there were issues of material fact relative to plaintiff's claim of strict liability against U.S.I."

In support of this assignment of error, appellant contends that, as to his theories of design defect and strict liability in tort, factual issues existed regarding U.S.I.'s (the manufacturer's) failure to install a "point-of-operation" guard and its failure to warn subsequent users of the dangers inherent in modifying or altering the press.

With respect to appellant's "duty to warn" theory against U.S.I., we find that the same lacks merit due to the clear import of the holding in *Temple* v. *Wean United, supra,* as stated in the fourth paragraph of the syllabus. Appellant's design defect theory must, on these facts, similarly fail, inasmuch as the substantial alterations of the press by Chrysler, G. B. Manufacturing and appellant obviated any pre-existing "defects" in the press when it was sold. The facts indicate that, after its original sale in 1953, the press was virtually rebuilt and then modified to suit the particular needs of whomever happened to own it at any given time. The facts also

---

[1] In the third paragraph of the syllabus in *Thrash,* the court held:

"Where the owner of a used motor vehicle sells the same 'as is' to a dealer in those articles for such disposition as the dealer may make of it, such owner may not ordinarily be held liable for injuries occasioned to one who purchases the vehicle from the dealer or for injuries to another, because of faults or imperfections in the vehicle which existed or occurred during the time it was in the possession of such owner."

indicate that G.B. Manufacturing installed a "point-of-operation" barrier, ostensibly to protect the employee-user when working. Yet, the absence of this very "point-of-operation" device, when U.S.I. initially sold the press to Chrysler, is what appellant now asserts was the "design defect" he should have been permitted to prove at trial. We disagree. Quite clearly, a malfunctioning activation mechanism caused appellant's injury, a mechanism that had undergone a "substantial change in the condition in which it [was] sold," so as to preclude a claim of strict liability in tort against the manufacturer. See *Temple* v. *Wean United, supra* (paragraph 1[b], of the syllabus). Accordingly, appellant's third assignment of error is not well-taken.

On consideration whereof, the judgment of the Fulton County Court of Common Pleas is hereby affirmed.

*Judgment affirmed.*

CONNORS, P.J., and RESNICK, J., concur.