MERMER et al., Appellants,

v.

MEDICAL CORRESPONDENCE SERVICES et al., Appellees.

[Cite as *Mermer v. Med. Correspondence Serv.* (1996), 115 Ohio App.3d 717.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–341.

Decided Nov. 22, 1996.

*Dennis P. Sawan*, for appellants.

*Teresa L. Grigsby*, for appellee Medical Correspondence Services, Inc.

*David W. Wicklund* and *Thomas P. Dillon*, for appellee Smart Corporation.

*Edwin A. Coy,* for appellee Hospital Correspondence Corporation.

_____

GLASSER, Judge.

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas. Plaintiffs-appellants, Sally A. Mermer and Dennis Grimshaw, appeal a decision which granted defendants-appellees, Medical Correspondence Services ("Med.Cor"), Smart Corp., and Hospital Correspondence Services ("HCC"), summary judgment on the fourth count of appellants' complaint, which asserted that appellees charged excessive and unconscionable fees in violation of the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. 1345.01 *et seq.* For the reasons discussed below, we reverse the judgment of the trial court.

The undisputed facts of this case are as follows. Appellants hired the law firm of Williams, Jilek, Lafferty & Gallagher Co., L.P.A. ("WJLG") to represent them in their personal injury claims. With the express, written authorization of their clients, WJLG requested relevant medical records from various hospitals' records departments in order to facilitate appellants' claims. Each request was forwarded to one of the appellees, who retrieved and copied the records, and sent them to WJLG along with an invoice showing the fees charged for the services. As a general practice, upon receipt of such an invoice, WJLG would pay the balance shown on the bill, and later deduct the costs of the copy service from the amount received on the claim. Under the retainer agreement between WJLG and appellants, appellants were still responsible to reimburse WJLG for the costs of the copy service in the event appellants did not recover under their personal injury claims. The charges about which appellants complain are as follows. Sally Mermer's medical records from Flower Memorial Hospital were copied by appellee Smart Corp. and included:

| | | |
|---|---|---|
| March 2, 1993 | 15 pages | $ 33.64 |
| May 12, 1993 | 318 pages | $269.55 |
| July 22, 1993 | 3 pages | $ 22.72 |
| Nov. 10, 1993 | 1 page | $ 7.00 |

Further, Sally Mermer's medical records from Southwest General Hospital were copied by appellee Med.Cor, whose invoices included:

| | | |
|---|---|---|
| April 21, 1993 | 9 pages | $31.80 |
| July 2, 1993 | 2 pages | $23.29 |

Dennis Grimshaw's medical records from St. Vincent's Medical Center were copied by appellee Med.Cor and invoiced as follows:

| | | |
|---|---|---|
| Feb. 9, 1991 | 9 pages | $31.80 |
| July 2, 1993 | 2 pages | $23.29 |

In addition, Dennis Grimshaw's medical records from the Medical College of Ohio were copied by appellee HCC and invoiced in the following manner:

| April 9, 1992 | 2 pages | $16.43 |
| August 5, 1992 | 2 pages | $16.32 |

Sally Mermer's personal injury case is still pending; thus, she has yet to pay WJLG for the costs of the copy service. Dennis Grimshaw's personal injury case has been concluded, and WJLG has deducted the costs of the copy service from his settlement.

Originally, the complaint contained four claims. Counts I and III were dismissed on June 20, 1994. On October 12, 1995, the trial court granted appellees' motion for summary judgment on Count II (breach of contract) and Count IV (violation of the OCSPA). Appellants now appeal the granting of summary judgment on Count IV only, raising the following assignment of error:

"The trial court erred, as a matter of law, in granting the appellees' motion for summary judgment, because the obtaining of copies of medical records for use in a personal injury lawsuit is a consumer transaction within the meaning of the Consumer Sales Practice Act, R.C. 1345.01(A)."

█ In reviewing a ruling on a summary judgment motion, this court must apply the same standard as does the trial court. *Lorain Natl. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 129, 572 N.E.2d 198, 199. We are guided by the requirements set forth in Civ.R. 56(C):

"Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

Moreover, "[a] motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial." *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus.

In their sole assignment of error, appellants assert that the transaction of obtaining medical records for the purpose of pursuing a personal injury claim is covered by the OCSPA. Appellants contend that their express authorization to obtain the medical records was given for the sole purpose of facilitating their personal injury claims and that WJLG acquired these records strictly in its

representative capacity for appellants. Hence, appellants argue that because their purpose in obtaining the medical records was primarily personal, the transactions fall within the scope of the OCSPA. In contrast, appellees contend that WJLG's acquisition of the medical records was strictly for evidentiary purposes, integral to WJLG's role in pursuing appellants' claims, and therefore was strictly a business transaction between WJLG and appellees. Hence, appellees assert that appellants were not parties to the transaction and thus were not consumers pursuant to R.C. 1345.01(A).

 The OCSPA defines a "consumer transaction" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household * * *." R.C. 1345.01(A). The OCSPA was enacted by the General Assembly to provide relief to "individuals" against unfair or deceptive acts or practices in connection with consumer transactions and, as such, is to be liberally construed. *Buddies, Inc. v. Fair* (May 6, 1993), Cuyahoga App. No. 62433, unreported, 1993 WL 146591. Further, as stated in *Tomes v. George Ballas Leasing, Inc.* (Sept. 30, 1986), Lucas App. No. L–85–359, unreported, 1986 WL 11420:

"[T]he scope of the act is applicable to individuals who acquire items [services] from suppliers primarily for personal use, but is not so restrictive that it prohibits individuals from using the goods [services] in limited business settings."

 While a law firm is "in the business" of pursuing lawsuits, this fact alone does not preclude the applicability of the OCSPA to the transaction at issue. In granting summary judgment, the court relied on the fact that appellants were not involved in the ordering of the copies, other than signing the authorization forms. However, this rationale ignores the fact that WJLG acted as appellants' agent in obtaining the records. An agency relationship exists "when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks." *Hanson v. Kynast* (1986), 24 Ohio St.3d 171, 24 OBR 403, 494 N.E.2d 1091, paragraph one of the syllabus. In this case, it is clear that appellants hired WJLG to represent them in their personal injury claims. It is in this representative capacity, and with appellants' express written authorization, that WJLG acquired appellants' personal medical records. Since WJLG made the specific requests in their representative capacity for appellants, the resulting transactions actually occurred between appellants and appellees, not WJLG and appellees.

The lower court further relied on the fact that appellants did not receive invoices for the copies provided. However, the issue is not who receives the invoices, but, rather, the purpose behind the acquisition of the records. While it

is true, as appellees suggest, that WJLG obtained the records for evidentiary use, the ultimate, fundamental goal, *i.e.*, the purpose, for such use was the pursuit of appellants' personal injury claims. Appellants' purpose in hiring WJLG to facilitate their personal injury claims was to recover for their injuries and to be made whole. Appellants gave WJLG express authorization to acquire the medical records in furtherance of this purpose. Thus, the transactions in question represent a personal use as required by the OCSPA. Moreover, appellants themselves were ultimately responsible for the fees shown on the invoice. Here, David Grimshaw has already paid the cost of the services through a deduction in his settlement. Sally Mermer's personal injury claim is still pending; hence, she has yet to pay the costs of the services. Therefore, exclusion of the transaction from the realm of the OCSPA on these grounds is misguided.

Appellants hired WJLG to represent them in their personal injury claims, gave WJLG express authorization, in its representative capacity, to obtain appellants' personal medical records to provide evidentiary support for their claims, and agreed to ultimately assume the costs for the services. Accordingly, appellants, through their agent, WJLG, were consumers in regard to the transactions in question, and the purpose of the transaction, restoration of appellants to their preinjury status, was primarily personal in nature.

 Further, while the trial court did not consider whether appellees qualify as suppliers pursuant to the OCSPA, such consideration is necessary to this analysis. As stated in *Garner v. Borcherding Buick, Inc.* (1992), 84 Ohio App.3d 61, 64, 616 N.E.2d 283, 285, "A review of the Ohio Consumer Sales Practices Act reveals that nothing in the statute provides that privity of contract is a prerequisite to the recovery of damages. Rather, the definition of a 'supplier' under the Ohio Consumer Sales Practices Act includes those who engage in the business of effecting consumer transactions, whether or not they deal directly with the consumer." Here, while there exists no privity of contract between appellees and appellants, such privity is not necessary for the OCSPA to apply. In engaging in the business of providing clients with copies of medical records on a regular and continuous basis, appellees "engage in the business of effecting consumer transactions." Therefore, appellees qualify as suppliers under the Act.

Construing the undisputed facts in this case most strongly in appellants' favor, this court finds that the transactions at issue were consumer transactions. Accordingly, the lower court erred in finding the OCSPA inapplicable and in granting summary judgment on that basis. Appellants' assignment of error is therefore well taken.

On consideration whereof, the court finds substantial justice has not been done the parties complaining. The judgment of the Lucas County Court of Common

Pleas is reversed, and this cause is remanded for further consideration consistent with this decision. Appellees are ordered to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK and ABOOD, JJ., concur.