Maurice **PATTERSON**, et al., Plaintiffs,

v.

**CENTRAL MILLS, INC. d/b/a Freeze, et al., Defendants.**

No. 3:98CV7083.

United States District Court, N.D. Ohio, Western Division.

Aug. 21, 2000.

682

William E. Armstrong, Buckley, King & Bluso, Cleveland, OH, John F. Bodie, Jr. Buckley, King & Bluso, Toledo, OH, Michael J. Goldman, Hawkins & Parnell, Atlanta, GA, for crossdefendant and defendant.

Richard F. Ellenberger, Law Offices of Robert M. Anspach & Associates, Toledo, OH, Mark A. Shaw, Fuller & Henry, Toledo, OH, for crossclaimant, crossdefendant and defendant.

Jeffrey M. Kerscher, Pheils & Wisniewski, OH, David R. Pheils, Jr., Pheils & Wisniewski, Perrysburg, OH, for plaintiff.

Dennis A. Lyle, Fuller & Henry, Toledo, OH, for crossclaim and defendant.

## ORDER

CARR, District Judge.

This is a diversity case in which Plaintiff Maurice Patterson was severely injured when his shirt caught fire. Pending are Defendant Central Mills, Inc.'s ("Central Mills") motion for summary judgment (Doc. 66), Defendant Time Warner Entertainment Company, L.P.'s ("Warner") motion for summary judgment (Doc. 110), and Defendant Meijer, Inc.'s ("Meijer") motion for summary judgment (Doc. 111). For the following reasons, Central Mills's motion shall be granted in part and denied in part, Warner's motion shall be granted, and Meijer's motion shall be granted in part and denied in part.

## BACKGROUND

Beatrice Patterson purchased a "Looney Tunes" shirt at Meijer for her eleven-year-old son, Maurice Patterson, in the fall of 1996. The Looney Tunes character "Taz" and related artwork were imprinted on the front and back of the shirt. The trade name "Freeze," a mark under which Central Mills markets such apparel, was also on the shirt. (*See* Ex. 4–5). Lastly, Warner's trade name, "An Official Looney Tunes Product," was imprinted on the shirt. (*See* Ex. 3).

On January 26, 1997, Maurice was watching the Super Bowl while his mother was sleeping. (Deposition of Maurice Patterson at 41, 53). During the Super Bowl, Maurice decided to cook himself some hot-dogs. (*Id.* at 46). After turning on the front burner of the gas stove, Maurice jumped on the counter to look for ketchup in the cabinets above the stove. (*Id.* at 45–50). While leaning over the stove, Maurice's shirt caught fire causing severe bodily injury to Maurice, including second and third degree burns over approximately thirty percent of his body. (Affidavit of Ms. Patterson).

Plaintiffs allege that the shirt was unreasonably flammable and that the shirt was the proximate cause of Maurice's injuries. Plaintiffs seek compensatory and punitive damages for negligence and breach of implied and express warranties. Plaintiffs also assert claims under the Ohio product liability statute and the Ohio Consumer Sales Practice Act. (*See* Second Amended Complaint).

In my Order dated April 27, 2000, I held that Central Mills, a supplier of the shirt at issue, should be deemed a "manufacturer" under Ohio Revised Code § 2307.78(B) because it marketed the shirt under its trade name "Freeze." (*See* Doc. 106). I further held that genuine issues of material fact exist as to whether Warner was a supplier of the shirt at issue, and, thus, as to whether Warner could be held liable in the place of a manufacturer pursuant to O.R.C. § 2307.78(B). (*Id.*).

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I. Central Mills

Central Mills argues that it is entitled to summary judgment because 1) plaintiffs' negligence was greater than any negligence on the part of defendants, 2) the shirt at issue was not defective under Ohio law; and 3) plaintiffs cannot support their claim under the Ohio Consumer Sales Practices Act. I disagree.

### A. Contributory Negligence and Primary Assumption of Risk

■■■ Summary judgment in a defendant's favor on the issue of contributory negligence is appropriate only when there is "no dispute as to any material fact" and "the plaintiff's negligence [is] so extreme as a matter of law that no reasonable person could conclude that the plaintiff was entitled to recover." *Collier v. Northland Swim Club*, 35 Ohio App.3d 35, 39, 518 N.E.2d 1226 (1987). Moreover, in Ohio, children between the ages of seven and fourteen are presumed to be incapable of negligence. *Stinespring v. Natorp Garden Stores, Inc.*, 127 Ohio App.3d 213, 218, 711 N.E.2d 1104 (1998); *Holman v. Licking County*, 107 Ohio App.3d 106, 113, 667 N.E.2d 1239 (1995). This presumption, however, can be rebutted by evidence indicating that the child failed to exercise such care as a child of the same age, capacity, education and experience would exercise under similar circumstances. *Sorriento v. Ohio Dept. of Transportation*, 61 Ohio Misc.2d 251, 257, 577 N.E.2d 167 (1988).

■■■ Here, Maurice was approximately eleven years old at the time of the accident, and, therefore, is presumed to be incapable of negligence. Central Mills has attempted to rebut this presumption by arguing that, even though he knew that

fire was dangerous and that clothing was flammable, Maurice leaned over a gas burner while wearing a baggy t-shirt. Moreover, Central Mills contends that Maurice made the situation worse by failing to "stop, drop, and roll" even though he knew that he should do so in the event his clothing was on fire.

Viewing the evidence most favorably toward plaintiffs, I cannot find that Central Mills has rebutted the presumption that Maurice is incapable of negligence. Central Mills has not presented any evidence to show that a child of the same age, capacity, education and experience as Maurice would have behaved differently in the same situation. Nor can I conclude that Maurice's negligence, if any, is so extreme as a matter of law that no reasonable person could conclude that he was entitled to recover.

Central Mills further contends that Ms. Patterson should be precluded from recovery because her negligence was greater than fifty percent. Again, I disagree. Though Ms. Patterson was sleeping while her unsupervised son used the gas stove, I cannot find, as a matter of law, that her alleged negligence was so extreme that no reasonable juror could conclude that she was entitled to recover.

Accordingly, summary judgment on the issue of contributory negligence is inappropriate in this case. *Collier*, 35 Ohio App.3d at 39, 518 N.E.2d 1226.

Central Mills additionally argues that it is entitled to summary judgment because plaintiffs' claims are barred by the doctrine of primary assumption of the risk.

■■■ Primary assumption of the risk is invoked when the activity undertaken involves risks that are so inherent they cannot be eliminated. *Collier*, 35 Ohio App.3d at 37, 518 N.E.2d 1226. "The effect of raising primary assumption of the risk as a defense is to state, as a matter of law, that defendant owes no duty to plaintiff." *Id.* Primary assumption of risk is a complete defense against claims of negligence.

*Anderson v. Ceccardi,* 6 Ohio St.3d 110, 113–114, 451 N.E.2d 780 (1983).

"The doctrine rests on the fiction that plaintiff has tacitly consented to the risk, thereby relieving defendant of any duty owed to him." *Collier,* 35 Ohio App.3d at 37, 518 N.E.2d 1226 (*citing* Prosser & Keeton, Torts (5 Ed.1984) 480, 481, Section 68). For example, the doctrine of primary assumption of the risk typically applies to spectators at a baseball game. *See, e.g., Anderson,* 6 Ohio St.3d. at 114, 451 N.E.2d 780; *Cincinnati Baseball Club Co. v. Eno,* 112 Ohio St. 175, 180–181, 147 N.E. 86 (1925). This is because baseballs are batted with great swiftness and with no precise accuracy; thus, spectators who may be hit by errant fly balls assume that risk as a part of the sport. *Cincinnati Baseball Club Co.,* 112 Ohio St. at 180–181, 147 N.E. 86.

■ Here, Central Mills argues that Maurice assumed the risk of injury by leaning over a gas stove while wearing a baggy t-shirt when the danger of fire was obvious and unavoidable. According to Central Mills, leaning over an operating gas stove involves risks that are so inherent they cannot be eliminated and, therefore, Central Mills cannot be held liable as a matter of law. I disagree.

Plaintiffs claim that Maurice's t-shirt was defective because it was *unreasonably* flammable. In other words, plaintiffs contend that even though they knew that clothing could burn, they did not know how quickly the shirt at issue would burn (*i.e.,* ignite in 5–7 seconds and be consumed by flames in 20–22 seconds) or how severely Maurice would be injured. Viewing the facts most favorably toward plaintiffs, I cannot find that the danger of injury in this case was so obvious and unavoidable that plaintiffs tacitly consented to the risk.

Further, to bar plaintiffs' products liability claims on the basis of primary assumption of risk would imply that wearing a baggy t-shirt while cooking is inherently and unavoidably dangerous, when it is not.

While intentionally placing your shirt on the burner of a gas stove may be an inherently dangerous activity, that does not mean that wearing a baggy t-shirt while cooking is also inherently dangerous. *See Westray v. Imperial Pools and Supplies, Inc.,* 133 Ohio App.3d 426, 433, 728 N.E.2d 431 (1999) (rejecting primary assumption of risk defense and holding that "[t]o bar appellant's products liability claims on the basis of 'primary assumption of risk' implies that a pool is inherently and unavoidably dangerous. While diving into the shallow end of a pool may be an inherently dangerous activity, that does not mean that a pool that is shallow in whole or in part is an inherently dangerous product"); *Collier,* 35 Ohio App.3d at 37, 518 N.E.2d 1226 (rejecting primary assumption of risk defense in diving accident case because the risk of injury while diving into a shallow pool is not so inherent as to relieve pool operators from any duty whatsoever to divers, and because the record evidence did not reveal that the plaintiff had any knowledge of the potential risks associated with diving—rather, the record merely suggested that the plaintiff may have proceeded carelessly without actually agreeing to accept the risk).

Accordingly, I shall deny Central Mills' motion for summary judgment on the primary assumption of risk doctrine.

### B. Ohio Products Liability Law
#### 1. Manufacturing Defect

Central Mills argues that it is entitled to summary judgment to the extent plaintiffs claim that the t-shirt was defective under O.R.C. § 2307.74, which provides that:

A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units now manufactured to the same design specifications, formula, or performance standards. A product may be defective is manufacture or construc-

tion as described in this section even though the manufacturer exercised all possible care in its manufacture or construction.

Because plaintiffs do not contest Central Mills's motion for summary judgment on this issue, I shall grant it.

### 2. Design Defect

A product is defective in design or formulation if 1) the foreseeable risks associated with its design or formulation exceed the benefits, or 2) it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. O.R.C. § 2307.75(A)(1)-(2).

■ The first part of this statute codifies the risk-benefit analysis. This test requires plaintiffs to prove only that the design risks outweigh the benefits, not that a product is "unreasonably dangerous." *Perkins v. Wilkinson Sword, Inc.*, 83 Ohio St.3d 507, 512, 700 N.E.2d 1247 (1998); *State Farm Fire & Cas. v. Chrysler*, 37 Ohio St.3d 1, 7, 523 N.E.2d 489 (1988). Ohio does not recognize the "obvious danger" defense in a design-defect claim. *Perkins*, 83 Ohio St.3d at 512, 700 N.E.2d 1247.

Under the risk-benefit analysis, foreseeable risks are determined by considering the following factors:

(1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

(3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

(4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer.

O.R.C. § 2307.75(B). The benefits associated with the design or formulation of the product, moreover, should be determined by considering the following:

(1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

(2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

(3) The nature and magnitude of any foreseeable risks associated with such an alternative design or formulation.

O.R.C. § 2307.75(C).

■ Here, Central Mills argues that risks associated with the design of the t-shirt do not outweigh the benefits. In particular, Central Mills contends that 1) the shirt conformed with the federal flammability standards provided in 16 C.F.R. § 1610.3 and is generally accepted by the trade as having no unusual burning characteristics; 2) all ordinary clothing is combustible and will burn when exposed to an open flame such as the flame emitted from plaintiffs' gas stove; 3) there are no acceptable fire retardant treatments for t-shirts that offer utility, comfort, aesthetics, performance and low toxicity; 4) the government does not require fire retardant treatments for such t-shirts; 5) there are no commercially available or acceptable alternative textiles for the manufacturing of t-shirts that would have prevented the injuries sustained by Maurice, and 6) it was not reasonably foreseeable that the t-shirt would be exposed to the flames of a gas stove. (*See* Doc. 112 at 16; Canter Affidavit). Because I find that genuine issues of material facts exist as to whether the risks of t-shirt outweigh the benefits, I shall deny Central Mills's motion for summary judgment.

First, although evidence that the shirt complied with federal flammability standards is relevant, it is not dispositive of plaintiffs' design defect claim. *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 742 (6th Cir.2000). According to plaintiffs, the shirt probably did meet the federal standards, but "even newspaper meets such test requirements," and "such compliance does not ensure a safe or flame resistant garment." (Damant Affidavit at ¶ 4k). Further, plaintiffs point out that the U.S. Department of Commerce has determined that federal testing standards were inadequate to protect the public against unreasonable risks insofar as the standards do not measure how clothing burns once it is ignited. *See* Federal Register, Vol. 33, No. 207.

Moreover, plaintiffs contend that Maurice used the shirt at issue as sleepwear, and, therefore, it should have complied with the more stringent federal flammability requirements for sleepwear. In support of their position, plaintiffs claim that, from at least 1992, the U.S. Consumer Product Safety Commission (CPSC) has recognized a special danger posed to children by baggy t-shirts because such shirts are more likely to come into contact with a flame and burn faster than snug-fitting or flame resistant shirts. Further, plaintiffs argue that the garment industry has known that hundreds of children are injured severely each year by wearing baggy t-shirts that meet only general federal flammability requirements, but not the more stringent sleepwear standards. (*See* Supplemental Damant Affidavit at Ex. 4). Because it did not meet the federal standards mandated for sleepwear, plaintiffs insist, the t-shirt was defective.

Central Mills disputes plaintiffs' contention that the t-shirt should have complied with federal sleepwear standards, arguing that 1) the t-shirt was meant to be worn as ordinary daywear, 2) the t-shirt was not made to be baggy, and 3) if it was baggy, Ms. Patterson purchased it in a size that was too large for Maurice. But even if the shirt was not meant to worn as sleepwear and not meant to be baggy, Central Mills has a duty to warn consumers of the dangers associated with foreseeable misuses of the products it produces. *See, e.g., Hollister*, 201 F.3d at 740 (reversing a trial court's entry of summary judgment based on her alleged misuse of the product); *Shipman v. Fontaine Truck Equip. Co.*, 184 Mich.App. 706, 459 N.W.2d 30, 33 (1990) (reversing a trial court's entry of judgment notwithstanding the verdict in favor of the manufacturer of a feed truck, where there was evidence suggesting that the manufacturer reasonably could have foreseen the unsafe modification that the plaintiff made to the truck). Accordingly, plaintiffs have demonstrated that genuine issues of material fact exist as to whether it was reasonably foreseeable that consumers would wear the t-shirt as sleepwear and, therefore, as to whether the t-shirt should have complied with federal sleepwear standards.

Further, Central Mills's argument that all ordinary clothing is combustible and will burn when exposed to an open flame does not address plaintiffs' design defect claim. Plaintiffs are not arguing that the t-shirt should not catch fire. Rather, plaintiffs are claiming that the t-shirt ignited too quickly, was consumed by flames too rapidly, and was too difficult to extinguish, making its design defective. Although Central Mills's insists that there are no acceptable fire retardant treatments for t-shirts and that there are no commercially available or acceptable alternative textiles for t-shirts that would have prevented the injuries sustained by Maurice, plaintiffs have presented evidence to the contrary. (*See, e.g.*, Damant Affidavit at ¶ 6 ("... the t-shirt worn by Maurice Patterson on the day of the incident could have been made from a variety of safer alternatives. These would have required minimal, if any, increase in cost, would have had little effect if any on the hand or feel of the fabric, and would have comparable durability."); Supplemental Affidavit of

Damant at Ex. 7 (documentation of various flame resistant and/or flame retardant fabric treatments); Second Affidavit of Beatrice Patterson at ¶ 8, Ex. 4). Thus, I find that there are genuine issues of material fact pertaining to whether safer ·alternatives were available.

Central Mills additionally argues that it was not reasonably foreseeable that the t-shirt would be exposed to the flames of a gas stove. But a 1985 CPSC report offered by plaintiffs challenges Central Mills's position by setting forth statistics on injuries resulting from apparel catching fire. *Hollister*, 201 F.3d at 739. The report indicates that kitchen ranges are a common source of ignition in accidents involving burning apparel and, in fact, refers to precisely the type of accident that occurred in the present case:

> Kitchen ranges were the second most common ignition source. · Ignition occurred most frequently when adults were leaning against or reaching across a range while wearing shirts/blouses, when children were climbing on or playing with ranges while wearing pajamas, and when elderly women were cooking while wearing robes or housecoats.

*Id.* The CPSC report additionally considered the severity of injuries that result when clothing catches fire: "Over one third of all clothing-related burn victims were hospitalized. This fact becomes dramatic when compared to the 4 percent hospitalization rate for all consumer product-related injuries ... and the 8 percent reported for all burn injuries." · *Id.* (*See also* Supplemental Damant Affidavit at ¶¶ 5a-d, Ex. 5).

Accordingly, I shall deny Central Mills's motion for summary judgment because a jury could reasonably conclude that the t-shirt was defective under the risk-benefit test set forth in O.R.C. § 2307.75(A)(1).

▮ Lastly, Central Mills asserts that it is entitled to summary judgment because, under O.R.C. § 2307.75(A)(2), the t-shirt at issue was not more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Again, I disagree because I find the there are genuine issues of material fact.

Here, Maurice suffered second and third degree burns over 30% of his body from a shirt that ignited rapidly and consumed him in flames in a matter of seconds. Plaintiffs assert that they did not expect the shirt would ignite so easily, burn so quickly, be so difficult to extinguish, or cause such severe injuries to Maurice. (Second Affidavit of Beatrice Patterson at ¶¶ 3–6; Affidavit of Maurice Patterson at ¶¶ 2–5). Moreover, plaintiffs have presented evidence that the CPSC reported that·consumers were unaware of the risks associated with loose-fitting t-shirts and expected the industry to educate the public accordingly. (*See* Supplemental Damant Affidavit at Ex. 4).

Accordingly, I shall deny Central Mills's motion for summary judgment. *See, e.g., Hollister*, 201 F.3d at 741 ("An ordinary consumer would have no way of knowing ... that a particular rayon shirt was substantially more combustible and flammable than another rayon shirt."); *Nadel v. Burger King Corp.*, 119 Ohio App.3d 578, 588, 695 N.E.2d 1185 (1997) (the fact that coffee caused second-degree burns was sufficient, by itself, to raise a factual issue as to whether the product was more dangerous than an ordinary consumer would expect),

### 3. Failure to Warn

To establish that a product is defective due to a failure to warn at the time of marketing, a plaintiff must demonstrate:

(a) The manufacturer knew or, in the exercise of reasonable care, should have known about a risk that is associated with the product and that allegedly caused harm for which the claimant seeks to recover compensatory damages;

(b) The manufacturer failed to provide the warning or instruction that a manufacturer exercising reasonable care

would have provided concerning that risk, in light of the likelihood that the product would cause harm of the type for which the claimant seeks to recover compensatory damages and in light of the likely seriousness of that harm. O.R.C. § 2307.76(A)(1). A product is not defective, however, if the manufacturer failed to warn of "an open and obvious risk or a risk that is a matter of common knowledge." O.R.C. § 2307.76(B).

Central Mills argues that the danger inherent in having clothing come into contact with a hot stove is "open and obvious." But, as the Sixth Circuit ruled previously, this analysis is oversimplified. *See Hollister*, 201 F.3d at 741. "It is true that a reasonable person would know that clothing is a flammable; the question, however, is one of degree." *Id.* (*citing Michigan Mut. Ins. Co. v. Heatilator Fireplace*, 422 Mich. 148, 366 N.W.2d 202, 205 (1985)). A consumer might reasonably be expected to know that t-shirts are flammable, but an ordinary consumer would have no way of knowing that a particular t-shirt would ignite and consume a person in flames in a manner of seconds. *See id.; LaGorga v. Kroger*, 275 F.Supp. 373, 379 (W.D.Pa. 1967), *aff'd* 407 F.2d 671 (3rd Cir.1969) (denying retailer's motion for summary judgment where plaintiff charged the retailer with selling a jacket that was unusually flammable and lacked a warning, and noting that "[t]he public cannot be expected to possess the facilities or technical knowledge to apprehend inherent or latent dangers").

■ Here, plaintiffs have presented evidence that the shirt was more flammable than they expected. (*See* Second Affidavit of Beatrice Patterson at ¶¶ 3–6; Affidavit of Maurice Patterson at ¶¶ 2–5). Accordingly, I shall deny Central Mills's motion on this point.

Further, Central Mills argues that it cannot be liable for failing to warn under O.R.C. § 2307.76(A)(1) because there is no evidence that it was aware of any increased risk or failed to take precautions.

But plaintiffs have presented evidence that the CPSC reported that children who wear baggy t-shirts as sleepwear had an increased risk of injury and that consumers were unaware of such risk. (*See* Supplemental Damant Affidavit at Ex. 4). Further, plaintiffs have provided evidence that the CPSC expected the industry to educate the public about these risks. (*Id.*). Plaintiffs also have submitted evidence that Central Mills did not place a warning on the shirt or comply with the more stringent federal regulations for sleepwear.

Accordingly, I shall deny Central Mills's motion for summary judgment because genuine issues of material fact remain on the issue of warnings.

## C. Breach of Implied Warranties

■ To establish a breach of implied warranty claim, plaintiffs must show 1) the existence of a defect in the product sold by the defendant, 2) such defect existed at the time the product left the hands of the defendant, and 3) the defect was the direct and proximate cause of the plaintiff's injuries. *White v. DePuy*, 129 Ohio App.3d 472, 479–480, 718 N.E.2d 450 (1998) (*citing Temple v. Wean*, 50 Ohio St.2d 317, 321, 364 N.E.2d 267 (1977)). These elements apply to manufacturers, wholesale sellers and retailers alike. *Abbott v. U.S.I. Clearing Corp.*, 17 Ohio App.3d 75, 77, 477 N.E.2d 638 (1984) (*quoting Bailey v. ITT Grinnell Corp.*, 536 F.Supp. 84, 87 (N.D.Ohio 1982)).

■ As discussed above, plaintiffs have demonstrated a prima facie case that the shirt manufactured and supplied by Central Mills was defective because of its design and because it lacked a warning regarding its extreme flammability. (*See, supra*, Part I.B). Mrs. Patterson further stated in an affidavit that she would not have purchased the shirt for her son if she had known that the shirt was extremely flammable. (*See* Second Affidavit of Mrs. Patterson at ¶ 7). Thus, a reasonable jury could find, based on this evidence, that the

shirt's design or failure to carry a warning was the proximate cause of plaintiffs' injuries.

Accordingly, I shall deny Central Mills's motion for summary judgment because plaintiffs have established a prima facie case against Central Mills for breach of implied warranty. *See, e.g., Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 740–743 (6th Cir.2000); *Deffebach v. Lansburgh & Bro.*, 150 F.2d 591, 591–592 (D.C.Cir.1945).

### D. Breach of Express Warranties/Failure to Conform to a Representation

Under O.R.C. § 2307.77, which codifies the common law claim of breach of express warranty, a product is defective if it:

did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product is may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation. .

O.R.C. § 2307.78(A)(2).[1,2]

"Representation" is defined as an *"express* representation of a material fact concerning the character, quality, or safety of a product." O.R.C. § 2307.71(O) (emphasis added). *See also White*, 129 Ohio App.3d at 484, 718 N.E.2d 450.

Here, plaintiffs have not presented any evidence that Central Mills made an express representation about the shirt purchased by Ms. Patterson. Plaintiffs argue that in designing and marketing the shirt at issue, Central Mills represented and warranted that the shirt was appropriate

1. Pursuant to O.R.C. § 2307.78(B), although Central Mills is a supplier of the shirt at issue, it is subject to liability as if it were the manufacturer. (*See* Doc. 106, Order).

2. Likewise, under O.R.C. § 2307.78(A)(2), a supplier is liable if the product:

did not conform, when it left the control of the supplier, to a representation made by

and safe to be worn by children. (*See* Doc. 128 at 18). But because this does not constitute an express representation, Central Mills is entitled to summary judgment.

### E. Ohio Consumer Sales Practices Act

Finally, plaintiffs allege that Central Mills violated Section 1345.02(B)(2) of the Ohio Consumer Sales Practices Act (OCSPA) by representing that the shirt at issue was of a particular standard, quality, grade, style, prescription, or model, when it was not. (*See* Second Amended Complaint at Count Nine). Central Mills contends that it is entitled to summary judgment because 1) Central Mills has been deemed a manufacturer, and, thus, cannot be held liable as a supplier under the OCSPA; 2) there is no privity between Central Mills and plaintiffs, and 3) there is no evidence of a misrepresentation or unfair practice by Central Mills.

 First, I disagree that Central Mills cannot be held liable as a supplier under the OCSPA because "this Court has previously determined that Central Mills is a manufacturer." (*See* Doc. 112 at 21). As plaintiffs correctly argue, I did not hold that Central Mills is a "manufacturer" under O.R.C. § 2307.71(I). (*See* 4/27/00 Order at 3–5). Rather, I held that Central Mills is a supplier under the Ohio Products Liability Act—which Central Mills admitted—that is subject to liability under O.R.C. §§ 2307.71–2307.77 *as if it were the manufacturer.* (*Id.*).

 Second, as held by the Ohio Court of Appeals, privity of contract is not a prerequisite to recovery under the OCSPA:

the supplier, and that representation and the failure to conform to it were a proximate cause of harm ... A supplier is subject to liability for the representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.

"A review of the Ohio Consumer Sales Practices Act reveals that nothing in the statute provides that privity of contract is a prerequisite to recovery of damages. Rather, the definition of a 'supplier' under the Ohio Consumer Sales Practices Act includes those who engage in the business of effecting consumer transactions, whether or not they deal directly with the consumer." Here, while there exists no privity of contract between appellees and appellants, such privity is not necessary for the OCSPA to apply. *Mermer v. Med. Correspondence Serv.*, 115 Ohio App.3d 717, 722, 686 N.E.2d 296 (1996) (*quoting Garner v. Borcherding Buick, Inc.*, 84 Ohio App.3d 61, 64, 616 N.E.2d 283 (1992)).

■ Third, I agree that there is no evidence that Central Mills made a representation regarding the standard, quality, grade, style, prescription, or model of the shirt. Although plaintiffs contend that in designing and marketing the shirt at issue Central Mills represented that the shirt was appropriate and safe to be worn by children, plaintiffs have presented no evidence that Central Mills made such an affirmative representation. *See Funk v. Montgomery AMC/Jeep/Renault*, 66 Ohio App.3d 815, 824–825, 586 N.E.2d 1113 (1990) (requiring an affirmative representations of inaccurate or false information to recover under O.R.C. § 1345.02) (*citing Lintermoot v. Brown*, 1988 WL 80492 (Ohio App. Aug.2, 1988)).

Accordingly, I shall grant Central Mills's motion for summary judgment on plaintiffs' claims under the OCSPA.

## II. Warner

### A. Negligence

To establish a claim of negligence, plaintiffs must show the existence of a duty, a breach of that duty, and an injury resulting proximately therefrom. *See Jeffers v. Olexo*, 43 Ohio St.3d 140, 142, 539 N.E.2d 614 (1989). Whether a duty exists is a question of law for courts to determine.

*Evans v. Ohio State University*, 112 Ohio App.3d 724, 739, 680 N.E.2d 161 (1996).

■ Warner argues that, as a trademark licensor, it owed no duty to plaintiffs, and thus is entitled to summary judgment as a matter of law. Plaintiffs, on the other hand, maintain that Warner had a duty to supervise the quality of products marketed as "An Official Looney Tune Product" and to ensure that such products were safe for minors. (*See* Second Amended Complaint at ¶ 30; Doc. 129 at 3). I agree with Warner.

Numerous courts have held that a trademark licensor—who does nothing more than permit the use its trademark—is not liable in tort for potential defects in the final product. *See, e.g., Kealoha v. E.I. Du Pont de Nemours & Co.*, 844 F.Supp. 590, 595–596 (D.Hawaii 1994) (granting summary judgment in favor of trademark holder who did not design, manufacture, or distribute allegedly defective product because mere failure to police a trademark does not subject trademark holder to tort liability); *Burkert v. Petrol Plus of Naugatuck*, 216 Conn. 65, 579 A.2d 26, 35 (1990) (to hold trademark owner liable, the trademark owner must be significantly involved in the manufacturing, marketing or distribution of the defective product); *Jackson v. Coldspring Terrace Property Owners Ass'n*, 939 S.W.2d 762, 768 (Tex. App.1997) (same).

Here, Warner merely licensed its product (a cartoon) to Central Mills under a licensing agreement. (*See* Doc. 110 at Ex. A). Though the trademark agreement required Central Mills to display copyright (©) and trademark (™) notices on the shirt to protect the intellectual property licensed from Warner, there is no record evidence that Warner sold, distributed, manufactured, or blended the shirt at issue. Nor is there any evidence that Warner designed or prepared the logo that was placed on the t-shirt. Accordingly, Warner was under no legal duty to supervise

the quality of the t-shirt or ensure that it was safe for minors.

In addition, plaintiffs claim that, under the licensing agreement, Warner had a contractual duty to inspect the quality of the t-shirt and ensure that it complied with all federal flammability regulations. But a "standard trademark agreement, in and of itself, does not establish an affirmative duty to inspect that could result in tort liability to third parties." *See In re TMJ Litigation,* 113 F.3d 1484, 1494 (8th Cir. 1997) (*citing Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.,* 967 F.2d 1516, 1520 (11th Cir.1992), *In re Silicone Gel Breast Implants,* 887 F.Supp. 1455, 1461 (N.D.Ala.1995)). In *In re TMJ Litigation,* the trademark agreement at issue permitted the licensor to examine the quality of the licensee's products as a condition for use of the licensor's trademarks and trade names. Nevertheless, the court held that summary judgment was proper because there was no evidence that such trademark agreement was anything more than standard or that the licensor in fact inspected the licensee's product pursuant to the agreement. *Id.*

Similarly, here, there is no record evidence that the licensing agreement was anything more than standard. Nor is there any evidence that Warner actually inspected the t-shirt at issue pursuant to the agreement. Accordingly, Warner was under no duty to inspect the quality of the

t-shirt by virtue of its licensing agreement with Central Mills.

Accordingly, I shall grant Warner's motion for summary judgment on plaintiffs' negligence claim.

### B. Ohio Consumer Sales Practices Act

Warner also contends that it is entitled to summary judgment on plaintiffs' claim under § 1345.02(B)(2) of the Ohio Consumer Sales Practices Act (OCSPA). Because plaintiff has failed to present evidence that Warner made a representation regarding the standard, quality, grade, style, prescription, or model of the shirt at issue, (*see, supra,* Part I.E), I shall grant Warner's motion for summary judgment.[3] *See Funk v. Montgomery AMC/Jeep/Renault,* 66 Ohio App.3d 815, 824–825, 586 N.E.2d 1113 (1990) (requiring an affirmative representations of inaccurate or false information to recover under O.R.C. § 1345.02) (*citing Lintermoot v. Brown,* 1988 WL 80492 (Ohio App. Aug.2, 1988)).[4]

### III. Meijer

Meijer contends that it did not breach any implied or express warranties and that it cannot be held liable as a supplier under O.R.C. § 2307.78 because it 1) was not negligent under O.R.C. § 2307.78(A)(1), 2) made no representations regarding the shirt at issue under O.R.C. § 2307.78(A)(2), and 3) is not a manufacturer under O.R.C. § 2307.78(B).[5]

---

**3.** Although this argument is not made explicitly in Warner's motion for summary judgment, it is contained in Central Mills's motion for summary judgment which Warner adopted in its entirety. (*See* Doc. 110 at 8).

**4.** I previously denied plaintiffs' motion for summary judgment against Warner and held that the genuine issues of material fact exist as to whether Warner facilitated placing the shirt at issue into the stream of commerce and, therefore, as to whether Warner should be subject to liability as if it were a manufacturer under O.R.C. § 2307.78(B). (*See* 4/27/00 Order). But even if a jury were to find that Warner facilitated placing the shirt into the stream of commerce and should be deemed a

manufacturer under the Ohio Products Liability Act, Warner still is entitled to summary judgment. Plaintiffs have alleged only two causes of action against Warner—negligence and a violation of the Ohio Consumer Sales Practices Act. (*See* Second Amended Complaint at Counts Seven and Nine). Plaintiffs have not made any claims against Warner under the Ohio Products Liability Act, and, therefore, whether Warner should be deemed a manufacturer under O.R.C. § 2307.78(B) is irrelevant.

**5.** Because Meijer failed to move for summary judgment on Count Nine of plaintiffs' Second Amended Complaint, which alleges that Meijer is liable under the Ohio Consumer Sales

## A. Supplier Liability and Breach of Express Warranties

Meijer argues that it is entitled to summary judgment on plaintiffs' claims under O.R.C. § 2307.78 and for breach of express warranty. I agree.

First, plaintiffs have not alleged that Meijer was negligent pursuant to O.R.C. § 2307.78(A)(1). (*See* Second Amended Complaint). Nor have plaintiffs contested Meijer's motion for summary judgment on this point.[6] Thus, summary judgment on the issue of negligence shall be granted.

Second, plaintiffs have not presented any evidence that Meijer made an express representation about the shirt purchased by Ms. Patterson. Under O.R.C. § 2307.78(A)(2), which codifies the common law claim of breach of express warranty, a supplier is liable if the product:

did not conform, when it left the control of the supplier, to a representation made by the supplier, and that representation and the failure to conform to it were a proximate cause of harm ... A supplier is subject to liability for the representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.

O.R.C. § 2307.78(A)(2).

"Representation" is defined as an "*express* representation of a material fact concerning the character, quality, or safety of a product." O.R.C. § 2307.71(O) (emphasis added). *See also Tekavec v. Van Waters & Rogers, Inc.,* 12 F.Supp.2d 672, 680–681 (N.D.Ohio 1998) ("some form of express conduct by the seller [is required] to maintain a cause of action based on a supplier's misrepresentation"); *Brown v. McDonald's Corp.,* 101 Ohio App.3d 294, 302, 655 N.E.2d 440 (1995) ("[R.C. § 2307.78(A)(2) ] applies only to express

representations"); *Welch Sand & Gravel, Inc. v. O & K Trojan, Inc.,* 107 Ohio App.3d 218, 228–29, 668 N.E.2d 529 (1995) ("[the] independent liability of [a] supplier is limited to two situations, both of which involve active supplier conduct causing or contributing to the claimant's injury.").

▪ Here, there is no record evidence of an express representation made by Meijer regarding the shirt at issue. Plaintiffs argue that in selecting and marketing the shirt at issue, Meijer represented and warranted that the shirt was appropriate and safe to be worn by children. (*See* Doc. 127 at 7). This, however, does not constitute an express representation. Meijer, therefore, is entitled to summary judgment on this issue.

Lastly, plaintiffs have not argued that Meijer should be held liable as a manufacturer under O.R.C. § 2307.78(B). Nor have they contested Meijer's motion for summary judgment on this issue.

Accordingly, I shall grant Meijer's motion for summary judgment on plaintiffs' claims under O.R.C. § 2307.78 and plaintiffs' breach of express warranties claim.

## B. Breach of Implied Warranties

To establish a breach of implied warranty claim, plaintiffs must show 1) the existence of a defect in the product sold by the defendant, 2) such defect existed at the time the product left the hands of the defendant, and 3) the defect was the direct and proximate cause of the plaintiff's injuries. *White v. DePuy,* 129 Ohio App.3d 472, 479–480, 718 N.E.2d 450 (1998) (*citing Temple v. Wean,* 50 Ohio St.2d 317, 321, 364 N.E.2d 267 (1977)). These elements apply to manufacturers, wholesale sellers and retailers alike. *Abbott v. U.S.I. Clearing Corp.,* 17 Ohio App.3d 75, 77, 477

---

Practices Act, I shall treat Meijer's motion as a one for *partial* summary judgment.

**6.** Although plaintiffs inserted one sentence in the conclusion of their opposition brief that a jury could find Meijer negligent, plaintiffs presented no evidence (or legal precedent) in support of their position. Accordingly, to the extent that plaintiffs do contest the issue of negligence, summary judgment in favor of Meijer is appropriate.

N.E.2d 638 (1984) (*quoting Bailey v. ITT Grinnell Corp.*, 536 F.Supp. 84, 87 (N.D.Ohio 1982)).

As discussed above, plaintiffs have demonstrated a prima facie case that the shirt was defective at the time it was sold by Meijer because it lacked a warning regarding its extreme flammability and because of its design. (*See, supra,* Part I.B). Ms. Patterson further stated in an affidavit that she would not have purchased the shirt for her son if she had known that the shirt was extremely flammable. (*See* Second Affidavit of Mrs. Patterson at ¶ 7). Thus, a reasonable jury could find, based on this evidence, that the shirt's defective design or failure to carry a warning was the proximate cause of plaintiffs' injuries.

Plaintiffs, therefore, have established a prima facie case against Meijer for breach of implied warranty. *See, e.g., Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 740–743 (6th Cir.2000); *Deffebach v. Lansburgh & Bro.*, 150 F.2d 591, 591–592 (D.C.Cir.1945). Thus, I shall deny Meijer's motion for summary judgment.

## CONCLUSION

It is, therefore,

ORDERED THAT

1. Central Mills's motion for summary judgment is granted in part and denied in part:

 a. Central Mills's motion for summary judgment on the issues of contributory negligence and primary assumption of risk shall be denied;

 b. Central Mills motion for summary judgment on plaintiffs' claim under O.R.C. § 2307.74 (manufacturing defect) shall be granted;

 c. Central Mills motion for summary judgment on plaintiffs' claim under O.R.C. § 2307.75 (design defect) shall be denied;

 d. Central Mills motion for summary judgment on plaintiffs' claim under O.R.C. § 2307.76 (failure to warn) shall be denied;

 e. Central Mills motion for summary judgment on plaintiffs' breach of implied warranty claim shall be denied;

 f. Central Mills's motion for summary judgment on plaintiffs' breach of express warranty/failure to conform to a representation (O.R.C. § 2307.77) claim shall be granted;

 g. Central Mills's motion for summary judgment on plaintiffs' claims under the Ohio Consumer Sales Practices Act shall be granted.

2. Warner's motion for summary judgment shall be granted:

 a. Warner's motion for summary judgment on the issue of negligence shall be granted;

 b. Warner's motion for summary judgment on plaintiffs' claims under the Ohio Consumer Sales Practices Act shall be granted.

3. Meijer's motion for partial summary judgment is granted in part and denied in part:

 a. Meijer's motion for summary judgment on plaintiffs' claim under O.R.C. § 2307.78 shall be granted;

 b. Meijer's motion for summary judgment on plaintiffs' breach of express warranty claim shall be granted;

 c. Meijer's motion for summary judgment on plaintiffs' breach of implied warranty claim shall be denied.

So ordered.